# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

(Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Newark, NJ 07102)

Ronald Satish Emrit, )
    Plaintiff (Pro Se) )
                                          )    C. A. No.:

v. )

University of Virginia Darden )
School of Business, Adams & Garth, )
National Association for the Advancement )
of Colored People (NAACP), )
Equal Employment Opportunity Commission )
(EEOC), & Department of Justice (DOJ) )
Civil Rights Division )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

COMES NOW, the plaintiff Ronald Satish Emrit, who is bringing forth this complaint against the five co-defendants in the amount of $45 million seeking joint and several liability in which the defendants would presumably seek contribution and indemnity from each other in the form of cross-claims out of a theory of contributory negligence, pure or modified comparative negligence and the apportionment of fault that accompanies the misled presumption and stereotyping an African-American woman as escort and prostitute and then banning her from a building simply because she was passing out business cards at lunchtime. In bringing forth this complaint, the plaintiff states, avers, and alleges the following:

## I.) NATURE OF THE CASE

1.) This cause of action is related to events that occurred in 2009 related to the plaintiff's friend, back-up dancer, and model Ashley "Honey Azul" Williams who also said that she was enlisted in the U.S. Navy and attended Piedmont Community College (PCC like PCC Wireless in Bowie, Maryland) in Charlottesville, Virginia.

2.) Although this cause of action is related to events that occurred to the plaintiff's friend Ashley Boxley or Ashley 'Honey Azul" Williams of Palmyra, Virginia, the plaintiff believes that he has the standing, causation, and redressability to bring this cause of action not on behalf of his friend as co-plaintiff but under the "legal fiction" substantially similar to the doctrine of transferred intent in which events that occurred regarding the plaintiff's friend also affected the mental health and well-being of the plaintiff.

3.) Furthermore, the plaintiff argues that the statute of limitations should be equitably tolled so that laches or statute of limitations can not be raised as an affirmative defense and/or in a cross-claim or counterclaim.

4.) To clarify, the plaintiff believes that the statute of limitations should be equitably tolled given the egregious nature of the racial discrimination experienced by the plaintiff's friend Ashley Williams and similar experiences with racism with which the plaintiff has also had to deal from academic institutions such as Saint Thomas University of Miami Gardens, Florida and/or Yale University of Connecticut (arguing the doctrine of respondeat superior or vicarious liability regarding George W. Bush's secret society d/b/a The Russell Trust Association).

5.) MOreover, Rule 23 of the Federal Rules of Civil Procedure (FRCP) addresses the concepts of commonality, typicality, and numerosity of claims regarding a class action lawsuit in which the plaintiff and his friend Ashley Williams would presumably be part of a certified class of discrete and

insular minorities which have experienced invidious discrimination within the context of American jurisprudence and are thus entitled to strict scrutiny with regards to the constitutionality of black-letter law legislation passed by Congress with bicameralism and presentment in which the laws must be narrowly-tailored to a compelling government objective rather than intermediate scrutiny (citing the stare decisis of ***Craig v. Boren***) or rational basis test in which legislation must be rationally-related to a legitimate government objective and the burden of proof or persuasion shifts.

6.) As opposed to a class action lawsuit pursuant to Rule 23 of Federal Rules of Civil Procedure (FRCP), the plaintiff argues that Ashley Williams could be joined as a necessary and indispensable party and co-plaintiff pursuant to Rule 19 of Federal Rules of Civil Procedure (FRCP) regarding this transaction or occurrence with permissive or mandatory counterclaims and a common nucleus of operative fact perhaps involving rival claimants

## II.) PARTIES TO THIS LITIGATION

7.) The plaintiff is an indigent, disabled, and unemployed resident of the state of Florida. His current mailing address is 6655 38th Lane East, Sarasota, FL 34243. His cell phone number is currently (703)936-3043 and his primary email address is einsteinrockstar2@outlook.com.

10.) The first defendant is University of Virginia Darden School of Business. The plaintiff can provide the mailing address and contact information for the second defendant if and only if (iff) the court orders service of process through U.S. Marshals and Form USM-285 as opposed to service of process through publication in a local newspaper.

11.) The second defendant is a staffing agency d/b/a Adams & Garth. The plaintiff can provide the mailing address and contact information for the second defendant if and only if (iff) the court orders service of process through U.S. Marshals and

Form USM-285 as opposed to service of process through publication in a local newspaper.

12.) The third defendant is the National Association for the Advancement of Colored People (NAACP). The plaintiff can provide the mailing address and contact information for the second defendant if and only if (iff) the court orders service of process through U.S. Marshals and Form USM-285 as opposed to service of process through publication in a local newspaper.

13.) The fourth defendant is the Equal Employment Opportunity Commission (EEOC). The plaintiff can provide the mailing address and contact information for the second defendant if and only if (iff) the court orders service of process through U.S. Marshals and Form USM-285 as opposed to service of process through publication in a local newspaper.

14.) The fifth and final defendant is the Department of Justice (DOJ) Civil Rights Division. The plaintiff can provide the mailing address and contact information for the second defendant if and only if (iff) the court orders service of process through U.S. Marshals and Form USM-285 as opposed to service of process through publication in a local newspaper.

### III.) JURISDICTION AND VENUE

13.) According to Federal Rules of Civil Procedure 8(a)(1), Plaintiff is required to provide "a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;"

14.) Because the court does not already have personal or subject matter jurisdiction over this issue, it is necessary to engage in a brief discussion of the court's jurisdiction so that the defendants can not move to dismiss this case based on procedural grounds involving a lack of proper jurisdiction.

15.) Pursuant to 28 U.S.C.A. Section 1332, the U.S. District Court for the District of New Jersey (as an Article III court) has jurisdiction over this matter even though there is no diversity of jurisdiction between the Plaintiff and the three defendants

given that the plaintiff lives in Sarasota, Florida and no longer in Fort Worth, Texas.

16.) As an Article III court, the U.S. District Court for the District of New Jersey also has subject matter jurisdiction over the present case at bar because this proceeding involves a discussion of Title VII of the Civil Rights Act of 1964, Americans with Disabilities Act of 1990, Equal Protection Clause, Due Process Clause, Fourth Amendment, and Privileges and Immunities Clause.

17.) Therefore, a federal question is presented by the implication of the black-letter law of the aforementioned federal statutes in addition to the discussion of Constitutional Law provisions.

18.) Venue in this jurisdiction is also proper pursuant to 28 U.S.C.A. Sections 1391 and 1400.

19.) Furthermore, the amount in controversy exceeds $75,000 (i.e. $200,000 is more than $75.000), this court has jurisdiction on the grounds of diversity and a federal question presented.

## IV.) STATEMENT OF FACTS

20.) In the year 2009, the plaintiff was informed by his friend that she had experienced racism at the University of Virginia Darden School of Business after being employed there by Adams & Garth temporary staffing agency in Charlottesville, Virginia.

21.) The plaintiff's friend Ashley Williams was in the plaintiff's music video "Lookin' for My Dimepiece" distributed to Apple Music and Vevo/YouTube by Ditto Music and JTVDigital of England, i.e. digital distribution companies in the new internet-based music business.

22.) The music video for "Lookin' for My Dimepiece" had also been distributed to Vimeo which recently had an initial public offering (IPO) on NASDAQ, i.e. an over-the-counter (OTC) stock market known for technology stocks substantially similar to Dow Jones Industrial Average (DJIA).

23.) Pursuant to Rule 201 of Federal Rules of Evidence (FRE), the court should also take judicial notice that Ashley "Honey Azul" Williams attended the 2010

Grammy Awards with the plaintiff and their mutual friend Singleton Newman who joined the Grammys/Recording Academy after the plaintiff directed her to contact the Grammys at (310)392-3777 or one of the local chapters for the Grammys.

24.) The plaintiff met Singleton Newman at the Black Hole club in Dundalk, Maryland (outside of Baltimore) after performing there with recording artists known as Cobra, Smoke, and J-Lee (SK-3).

25.) Nevertheless, the plaintiff was informed in 2009 that the Ashley Williams was banned from the University of Virginia Darden School of Business after she was passing out business cards on lunchtime regarding her modeling agency d/b/a A Taste of Honey Media Group.

26.) According to the plaintiff's friend Ashley Williams, she was banned from the premises of the University of Virginia Darden School of Business because they specifically though that she was an escort or prostitute although this is hearsay as an "out-of-court statement asserted for the truth of the matter" and can not be corroborated as firsthand knowledge through direct evidence such as eyewitness testimony rather than demonstrative, trace, or circumstantial evidence.

27.) However, since the University of Virginia Darden School of Business impugned the chastity of a woman by referring to her as a prostitute/escort (hearsay), this could be a hearsay exception or non-hearsay as legally-operative language in the sense that this would be admitted to prove a defamation claim as slander per se, libel per se, or another dignitary tort such as the invasion of privacy through false light.

28.) This hearsay exception would be according to Rule 803 of Federal Rules of Evidence (FRE) and could also be established according to past recollection recorded to refresh the memory of Ashley Williams if and only if (iff) she is subpoenaed as a witness to testify in a defamation case or regarding another dignitary tort such as invasion of privacy through false light.

29.) According to Rule 403 of Federal Rules of Evidence (FRE) regarding relevance, the probative value of the proffered evidence (of Ashley Williams' past recollection recorded) would not be outweighed by the prejudicial effect.

30.) Under an alternative theory, the statements of Ashley Williams could be

admitted as an excited utterance, present sense impression, state of mind, effect on hearer and even under the business records exception pursuant to the stare decisis of **_Palmer v. Hoffman_** and **_Johnson v. Lutz_** since the University of Virginia Darden School of Business is a place where the Ashley Williams worked back in 2009 through the Adams & Garth staffing agency.

31.) Pursuant to Rule 201 of Federal Rules of Evidence (FRE), the court should take judicial notice that the plaintiff's song "Lookin' for My Dimepiece" was Track # 4 on the plaintiff's album "Unleash the Beast" released by CD Baby as a subsidiary of Disc Makers (of Pennsauken, New Jersey) and Audio Visual Labs (AVL) as the parent corporation.

32.) Furthermore, this song "Lookin' for My Dimepiece" was distributed by Mondotunes of Huntington Beach, California now d/b/a Octiive as part of compilation and might have been distributed by Ditto Music of England or Tunecore of Brooklyn, New York.

33.) Pursuant to Rule 201 of Federal Rules of Evidence (FRE), the court should take judicial notice that several of the plaintiff's songs have been the subject of litigation in other jurisdictions such as North Carolina (Lady Brazil), Texas (All the Fine Ladies), Northern Georgia (I Don't Need Chocolaty), Washington, DC (La Reina Cubana), and Tampa (Dilemma/Bilionaire).

## V.) COUNT ONE: VIOLATION OF AMERICANS WITH DISABILITIES ACT OF 1990 (ADA)

21.) By discriminating against the plaintiff's friend Ashley Williams, the defendants had committed discrimination against the plaintiff and violated the Americans with Disabilities Act of 1990 (ADA) because the plaintiff is disabled with bipolar disorder and schizoaffective disorder even if the defendants did not have previous knowledge or constructive notice of the plaintiff's disabilities and never even met the plaintiff.

22.) The plaintiff argues specifically that the NAACP, EEOC, and Department of Justice Civil Rights Division committed an even more egregious violation of Americans with Disabilities Act of 1990 (ADA) and Title VII of Civil Rights Act

of 1964 by failing to represent Ashley Williams even though these organizations had standing, causation, and redressability to represent an African-American woman who experienced discrimination from a university as a "state actor."

### V.) COUNT TWO: INVASION OF PRIVACY THROUGH FALSE LIGHT

33.) By discriminating against the plaintiff's friend Ashley Williams, the defendants had committed an invasion of privacy through false light against both the plaintiff and his "best friend" at the time in 2009, i.e. Ashley Williams whom the plaintiff met on Craigslist and who was a back-up dancer at the plaintiff's album release party in Parkville, Maryland at the the FOP Lounge (Fraternal Order of Police).

34.) By accusing the plaintiff's friend Ashley Williams of being an escort or prostitute, the defendants portrayed Ashley Williams in a "false light" because this is an inaccurate description of her personality or profession and the most important "legalese" regarding these dignitary torts is that they "impugned the chastity of a woman," i.e. Ashley Williams of a Taste of Honey Media Management, i.e. the plaintiff's best friend at the time.

### VI.) COUNT THREE: DEFAMATION (SLANDER)

30.) By arguing a "legal fiction" similar to the doctrine of transferred intent, the plaintiff argues that the defendants committed defamation in the form of libel and slander and perhaps libel per se or slander per se by "impugning the chastity of a woman" by inferring that the plaintiff's friend was an escort or prostitute simply because she is an attractive African-American woman who was passing out business cards at lunchtime at the Darden School of Business which apparently was contracting or subcontracting with the temporary agency d/b/a Adams & Garth also in the Charlottesville area.

31.) Because Ashley Williams is neither a public figure nor a limited public figure, the plaintiff argues that the standard of a "knowing falsity and reckless disregard

for the truth" does not apply according to the stare decisis of *Hustler v. Falwell* and *New York Times v. Sullivan*.

## VII.) COUNT FOUR: NEGLIGENCE

31.) The plaintiff argues that the defendants committed negligence by entertaining or believing in a stereotype that attractive or beautiful African-American women must be prostitutes or escorts and not business women.

32.) More specifically, the plaintiff argues that the defendants had a duty not to engage in such stereotypes since they are educators and professional people representing a popular state academic institution.

33.) To clarify, the first two defendants in particular breached their duty owed to the plaintiff and his friend by implying that the plaintiff's best friend is a "whore, prostitute, hooker, or escort" which is something that only a racist or misogynist would say about an African-American woman in the workplace.

34.) The plaintiff believes that Stephanie Clifford or Stormy Daniels had similar issues with misogynists criticizing her choice of life but the difference between the plaintiff's friend and Stormy Daniels is that the plaintiff's best friend Ashley Williams is not from the same profession as Stormy Daniels.

35.) Regarding these claims of negligence in which there was never an assumption of risk or doctrine of last clear chance or doctrine of "unclean hands" on the part of Ashley Williams, the plaintiff argues that the five defendants as state actors (except Adams & Garth) are both the proximate cause and causation-in-fact of both Ashley Williams depression and trauma regarding this incident and the negligent infliction of emotional distress experienced by the plaintiff as the best friend of Ashley Williams.

36.) Regarding the test applied in the stare decisis of *United States v. Carroll Towing*, there is a discussion of the probability and gravity of the damages experienced by the plaintiff and his friend regarding loss of wages, loss of consortium, or harm to reputation in the local community.

37.) The familiar test established in **_Palsgraf v. Long Island Railroad_** examines the "zone of danger" with regards to proximate cause and the "Butterfly Effect" involving fractals of Chaos Theory in which a "butterfly flapping its wings in TIbet can be the causation-in-fact although not the proximate cause of an earthquake halfway around the world in San Francisco.

38.) Regarding the familiar discussion of the four elements of **"duty, breach, causation, and damages,"** the plaintiff can say with substantial certainty that **but for** the tortious conduct of the five defendants committing negligence, the plaintiff's friend never would have experienced depression, loss of consortium, loss of wages, harm to reputation in which the five defendants "impugned the chastity of Ashley Williams" by referring to her as an escort because she was passing out business cards at lunchtime regarding her modeling agency.

## VIII.) COUNT FIVE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED)

33.) By stereotyping the plaintiff's friend Ashley as an escort or prostitute rather than a respectable and professional business woman, the plaintiff has firsthand knowledge that the defendants caused the plaintiff's friend to experience a great amount of stress in addition to loss of wages, loss of consortium, and a harm to reputation in the local Charlottesville, Virginia area given that the plaintiff's friend Ashley is not a public figure or limited public figure even though she apparently appeared a calendar referred to as "Dimes" and operated a start-up modeling agency d/b/a A Taste of Honey Media Group.

34.) As such, the plaintiff argues that it is both extreme and outrageous conduct on the part of the defendants to racially-profile the plaintiff's friend as an escort or prostitute simply because she is an attractive African-American woman who was passing out business cards in 2009 at the University of Virginia Darden School of Business.

## IX.) COUNT SIX: VIOLATION OF EQUAL PROTECTION CLAUSE

35.) The plaintiff argues that all of the defendants violated the Equal Protection Clause of the Fifth and Fourteenth Amendments of the U.S. Constitution by racially-profiling the plaintiff's friend Ashley Williams as an escort or prostitute simply because she is an attractive African-American woman who was passing out business cards at University of Virginia Darden School of Business in 2009.

36.) The plaintiff also argues that the Department of Justice Civil Rights Division, Equal Employment Opportunity Commission (EEOC), and National Association for the Advancement of Colored People (NAACP) violated the Equal Protection CLause by failing to represent the plaintiff's friend Ashley Williams when she was clearly distraught about the discrimination she had experienced from the University of Virginia Darden School of Business.

## X.) COUNT SEVEN: VIOLATION OF DUE PROCESS CLAUSE

35.) The plaintiff argues that all of the defendants violated the Due Process Clause of the Fifth and Fourteenth Amendments of the U.S. Constitution by racially-profiling the plaintiff's friend Ashley Williams as an escort or prostitute simply because she is an attractive African-American woman who was passing out business cards at University of Virginia Darden School of Business in 2009.

36.) The plaintiff also argues that the Department of Justice Civil Rights Division, Equal Employment Opportunity Commission (EEOC), and National Association for the Advancement of Colored People (NAACP) violated the Due Process Clause by failing to represent the plaintiff's friend Ashley Williams when she was clearly distraught about the discrimination she had experienced from the University of Virginia Darden School of Business.

## XI.) COUNT EIGHT: VIOLATION OF PRIVILEGES AND IMMUNITIES CLAUSE

37.) The plaintiff argues that all of the defendants violated the Privileges and Immunities Clause of Article IV, Section 2, Clause 1 (i.e. Comity Clause) of the U.S. Constitution by racially-profiling the plaintiff's friend Ashley Williams as an

escort or prostitute simply because she is an attractive African-American woman who was passing out business cards at University of Virginia Darden School of Business in 2009.

38.) The plaintiff also argues that the Department of Justice Civil Rights Division, Equal Employment Opportunity Commission (EEOC), and National Association for the Advancement of Colored People (NAACP) violated the Privileges and Immunities Clause of Article IV, Section 2, Clause 1 (i.e. Comity Clause) by failing to represent the plaintiff's friend Ashley Williams when she was clearly distraught about the discrimination she had experienced from the University of Virginia Darden School of Business.

## XII.) COUNT NINE: VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964

37.) The plaintiff argues that all of the defendants violated Title VII of Civil Rights Act of 1964 by racially-profiling the plaintiff's friend Ashley Williams as an escort or prostitute simply because she is an attractive African-American woman who was passing out business cards at University of Virginia Darden School of Business in 2009.

38.) The plaintiff also argues that the Department of Justice Civil Rights Division, Equal Employment Opportunity Commission (EEOC), and National Association for the Advancement of Colored People (NAACP) violated TItle VII of Civil Rights Act of 1964 by failing to represent the plaintiff's friend Ashley Williams when she was clearly distraught about the discrimination she had experienced from the University of Virginia Darden School of Business.

## XIV.) PRAYER FOR RELIEF

WHEREFORE, the plaintiff is seeking damages in the amount of $200,000 in addition to an equitable remedy of an injunction pursuant to Rule 65 of Federal

Rules of Civil Procedure (FRCP). Furthermore, the defendants have violated the Equal Protection Clause and Due Process Clause of the Fifth and Fourteenth Amendments to the U.S Constitution in addition to having violated the Privileges and Immunities Clause of Article IV, Section 2, Clause 1 of the U.S. Constitution. In asserting this "prayer for relief," the plaintiff states, avers, and alleges the following:

A.) The plaintiff is seeking damages in the amount of $45,000,000 as punitive, compensatory, treble, actual, presumed, and special damages for the defendants' commission of the tort of negligence in addition to a violation of the following "black-letter law" provisions of federal law: 42 U.S.C. Section 1983, Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act of 1990 (ADA).

B.) The remedy at law in the form of an injunction as an equitable remedy or a declaratory judgment according to Rule 57 of Federal Rules of Civil Procedure (FRCP) would be considered appropriate given that it has been proved that the defendants have violated the plaintiff's rights with regards to the Equal Protection Clause and Due Process Clause (inherent from the Fifth and Fourteenth Amendments) and the Privileges and Immunities Clause (of Article IV, Section 2, Clause 1). This equitable remedy or an injunction should include specific provisions in which the plaintiff's friend Ashley Williams should be offered a

full-time position of employment at University of Virginia Darden School of Business.

C.) More specifically, the plaintiff is also requesting the equitable remedy that he be offered a position of employment as a disabled law professor at University of Virginia Darden School of Business in the field of entertainment law or alternatively at the University of Virginia School of Law.

D.) To reiterate, the plaintiff is seeking a preliminary injunction pursuant to Rule 65 of Federal Rules of Civil Procedure (FRCP) such that the first defendant be required to offer him a position of employment even though he is disabled with bipolar disorder and schizoaffective disorder.

Respectfully submitted,

Ronald Satish Emrit

6655 38th Lane East

Sarasota, Florida 34243

(703)936-3043

einsteinrockstar@hotmail.com

einsteinrockstar2@outlook.com